# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: | ) |
| | ) Case No. 3:17-bk-07799 |
| TADD WHOLESALE SUPPLY LLC | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) Judge Harrison |
| | ) |

## AGREED ORDER APPROVING BIDDING PROCEDURES AND SCHEDULING A SALE APPROVAL HEARING

This matter coming before the Court on the Motion by Debtor Pursuant to 11 U.S.C. §§ 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to the Expedited Motion for Authority to Sell Inventory at Auction and for Establishment of Bid Procedures (the "Procedures Motion"), filed by the above-captioned Debtor and Debtor in possession (the "Debtor");[1] and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(a); the Court having considered the Procedures Motion, and it appearing that the relief requested in the Procedures Motion is in the best interests of the Debtor's bankruptcy estate, its creditors, and other parties in interest; and objections, if any, having been resolved, as reflected by this Agreed Order, and after due deliberation and sufficient cause appearing therefor;

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the Procedures Motion.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

A. Notice of the Procedures Motion was adequate and sufficient under the circumstances of the Debtor's chapter 11 case, and such notice complied with all applicable requirements of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of Court for the United States Bankruptcy Court for the Middle District of Tennessee (the "Local Rules").

B. The bid procedures, substantially in the form attached hereto as Exhibit A (the "Amended Bid Procedures") are reasonable and appropriate under the circumstances of the Debtor's chapter 11 case.

C. The entry of this Order is in the best interests of the Debtor, its estates, its creditors, and other parties in interest.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, THE COURT HEREBY ORDERS THAT**:

1. The Procedures Motion shall be, and hereby is, GRANTED to the extent set forth herein and as reflected by the Amended Bid Procedures attached hereto.

2. The Amended Bid Procedures are approved in their entirety, and are incorporated into this Order as though fully set forth herein and shall apply to the proposed Auction and sale of the Debtor's Assets.

3. The following are modifications to the APA and/or sale process:

    a. The two "Big Ass" fans installed in the warehouse shall not be sold as part of the sale and shall remain in warehouse.

b. Any allocations of sale proceeds to particular assets or collateral shall be subject to further order of the Court.

c. Any inventory that is Abandoned Assets shall be placed by the purchaser into dumpsters to be provided and removed from the premises by the Debtor.

4. The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

5. If the Debtor receives more than one Qualified Bid (as defined in the Bid Procedures), an auction (the "Auction") shall be held on **April 30, 2018 at 10:00 a.m. (prevailing Central Time)**, at the offices of Lefkovitz and Lefkovitz, or at any such other location as the Debtor may hereafter designate.

6. Gordon Brothers Commercial & Industrial, LLC is approved as the Stalking Horse Bidder for the Debtor's Assets, and its bid of $250,000, pursuant to the terms of the Stalking Horse APA (which will be attached to the Bid Procedures as Exhibit 1, when the Bid Procedures are provided to bidders) is approved as the Stalking Horse Bid.

7. In the event another party other than the Stalking Horse Bidder is the Successful Bidder for the Debtor's Assets, subject to the terms of the Stalking Horse APA, the Debtor shall pay a break-up fee to Stalking Horse Bidder in an amount equal to $12,500.00 (the "Break-Up Fee") and shall reimburse the Stalking Horse Bidder for the actual, documented and reasonable out-of-pocket expenses incurred by the Stalking Horse Bidder in performance of the Stalking Horse Bidder's due diligence investigation, review, research, and analysis regarding the Debtor's Assets and the negotiations and documentation of the Stalking Horse APA. The Break-Up Fee and the expense reimbursement shall constitute an allowed priority administrative claim against

the Debtor's estate pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, secured by a lien in the Debtors' Assets, which such lien shall be (i) junior only to liens extant as of the Petition Date, and (ii) deemed automatically perfected by entry of this Order. The Break-Up Fee and expense reimbursement shall be payable by the Debtor from the proceeds of the sale of the Debtor's Assets prior to any other payments or distributions being made from such sale proceeds (including, for the avoidance of doubt, prior to any payments or distributions to the Debtor's secured creditors, professionals, or administrative claimants). No further or additional order from the Court shall be required in order to give effect to such provisions relating to the terms of payment of the Break-Up Fee and the expense reimbursement and the Stalking Horse Bidder's professional advisors are not obligated to comply with any provisions of the Bankruptcy Code regarding Court approval of professionals fees payable by the Debtor and included in the expense reimbursement. In the event the Stalking Horse Bidder is not the Successful Bidder, after the Sale Hearing, the Stalking Horse Bidder shall provide supporting information regarding the expense reimbursement via email to the Debtor and the United States Trustee ("UST"). The UST shall have seven (7) business days after receipt of such email to file an objection to the expense reimbursement. If no timely objection to the expense reimbursement is filed, the Debtor shall pay the expense reimbursement consistent with this Order.

8. The Sale Hearing shall be conducted on **May 1, 2018 at 11:00 a.m. (prevailing Central Time)**, before the Honorable Marian F. Harrison, United States Bankruptcy Court for the Middle District of Tennessee, Courtroom 3, 701 Broadway, Nashville, Tennessee 37203, and may be adjourned from time to time. A copy of the proposed order approving the sale (the "Sale Order") is attached hereto as Exhibit B.

9. Any objections to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objections with specificity, and shall be filed with the Court on or before **April 27, 2018 at 12:00 noon (prevailing Central Time)**.

10. The proposed sale of the Debtor's Assets and the Auction shall be conducted in accordance with the provisions of this Order and the Bid Procedures.

11. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), and 7062 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

12. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order. All matters arising from or related to the implementation of this Order may be brought before the Court as a contested matter, without the necessity of commencing an adversary proceeding.

This order was signed and entered electronically as indicated at the top of the first page.

Approved for entry:

**/S/ STEVEN L. LEFKOVITZ**
Steven L. Lefkovitz
Law Offices Lefkovitz & Lefkovitz
618 Church St. Ste. 410
Nashville, TN 37219
Tel: 615-256-8300
Fax : 615-255-4516
Email: slefkovitz@lefkovitz.com

*Counsel for the Debtor*

**/S/ PAUL G. JENNINGS**
Paul G. Jennings
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6267
Fax: (615) 742-6293
pjennings@bassberry.com

*Counsel to Gordon Brothers Commercial
& Industrial LLC*


**/S/ ROBERT L. SCRUGGS**
Robert L. Scruggs
2021 Richard Jones Rd., Suite 220
Nashville, TN 37215
Tel: (615) 309-7090
Fax: (615) 309-7046
bscruggs@scruggs-law.com

*Counsel to BankTennessee*


SAMUEL K. CROCKER
UNITED STATES TRUSTEE, REGION 8


**/S/ NATALIE M. COX**
Natalie M. Cox, Trial Attorney
Office of the United States Trustee
318 Customs House, 701 Broadway
Nashville, TN 37203
Tel: (615) 736-2254
Fax: (615) 736-2260
Natalie.Cox@usdoj.gov


**24628232.4**

In re:

TADD WHOLESALE SUPPLY LLC
          Debtor.

## AMENDED BID PROCEDURES

These sale and bid procedures (the "Bid Procedures") govern the procedures for certain of the assets (the "Assets") of the above-captioned debtor and debtor in possession (collectively, the "Debtor"), pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and are provided for the benefit of the Debtor, its bankruptcy estate and the Stalking Horse Bidder (as defined below).

**I.**     **Stalking Horse Bidder**

The Debtor has completed arm's length negotiations with Gordon Brothers Commercial & Industrial LLC (the "Stalking Horse Bidder"), to serve as the stalking horse bidder for the Assets. As a result of those negotiations, the Stalking Horse Bidder has submitted an initial bid for the Assets of $250,000 (the "Stalking Horse Bid"). The Stalking Horse Bid, memorialized by an Asset Purchase Agreement by and between the Debtor and the Stalking Horse Bidder, dated April 13, 2018 attached hereto as **Exhibit 1** (as may be amended, the "Stalking Horse APA"), shall be subject to higher and better bids pursuant to the terms of these Bid Procedures and applicable law.

**II.**     **Assets to Be Sold**

Any Potential Bidder (defined below) may obtain a detailed description of the Assets through the process described herein. Except as excluded in the Stalking Horse APA, the Debtor intends to sell substantially all its assets, which include, but are not limited to: inventory, equipment, racking, furniture, fixtures and equipment, intellectual property, customer lists, eBay account(s), general intangibles, and other tangible personal property.

Pursuant to section 363 of the Bankruptcy Code and in accordance with these Bid Procedures, the Debtor intends to sell the Assets free and clear of all liens, claims, encumbrances, and interests and the Assets will be sold on an "As Is, Where Is" basis.

The Debtor proposes to sell the Assets in accordance with the terms and conditions set forth in the Stalking Horse APA, with such modifications to the Stalking

Horse APA as made by the Successful Bidder (defined below).

**III.     Participation Requirements**

Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Debtor, in order to participate in the bidding process, prior to the Bid Deadline (defined below), each person other than the Stalking Horse Bidder who wishes to participate in the bidding process (each a "Potential Bidder") must deliver to the Notice Parties (defined blow) at the addresses provided below:

a. an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtor to a Potential Bidder) in form and substance satisfactory to the Debtor; and

b. sufficient information that will allow the Debtor to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the sale.

A Potential Bidder that has otherwise complied with the requirements described above, and that the Debtor determines in its reasonable business judgment is reasonably likely (based on availability of financing, experience, or other considerations) to be able to consummate the sale, will be deemed a "Qualified Bidder."

**IV.     Due Diligence**

The Debtor may, in its reasonable business judgment, and subject to competitive and other business considerations, afford each Qualified Bidder and any person seeking to become a Qualified Bidder, such due diligence access to materials and information relating to the Assets as the Debtor deems appropriate. Due diligence access may include facility tours, access to electronic data rooms, on-site inspections, and other matters which a Qualified Bidder may reasonably request and as to which the Debtor, in its reasonable business judgment, may agree. No additional due diligence will continue after the Bid Deadline (defined below). Neither the Debtor nor any of its affiliates (or any of their respective representatives) will be obligated to furnish any information relating to the Assets to any person other than to Qualified Bidders. The Debtor makes no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the Stalking Horse APA or in any other definitive agreement a Successful Bidder executed and delivered to by the Debtor.

**V.     Bid Deadline**

A Qualified Bidder that desires to make a bid shall deliver copies of such bid no later than **12:00 noon (prevailing Central Time) on or before April 27, 2018** (the "Bid Deadline"), via email, to the following parties (collectively, the "Notice Parties"):

Steven Lefkovitz (SLefkovitz@Lefkovitz.com)
Gary Murphey (murphey@rfslimited.com)

Ulos K. Anderson (uanderson@gordanbrothers.com)

Paul G. Jennings (pjennings@bassberry.com)

VI. **Requirements of a Qualified Bid**

A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder prior to the Bid Deadline and complies with all of the following (a "Qualified Bid"):

a. it is in writing;

b. it: (a) is definitive and binding, not subject to due diligence or any conditions other than Court approval; (b) is accompanied by evidence of financial wherewithal of the proposed buyer acceptable to the Debtor in its sole discretion;
(c) is accompanied by an asset purchase agreement marked to show changes from the Stalking Horse APA (a "Modified APA"); and (d) contemplates a cash purchase price of at least $275,000 (the "Minimum Cash Overbid Amount");

c. it is irrevocable until the earlier of (i) the Qualified Bidder's bid being determined by the Debtor not to be a Qualified Bid or (ii) another Qualified Bid being approved by the Bankruptcy Court, subject to the Reserve Bidder (defined below) provision hereof;

d. it provides that the Qualified Bidder is obligated to perform as the Reserve Bidder (defined below) in the event the Qualified Bidder is not the Successful Bidder, but is the second highest bidder for the Assets; and

e. it is accompanied by an affirmative statement from the Qualified Bidder that: (i) it has and will continue to comply with these Bid Procedures; (ii) its bid does not entitle such Qualified Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement; and (iii) it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to bidding for the Assets.

For purposes of these Bid Procedures and bidding at the Auction, the Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid. The Debtor shall notify all other Qualified Bidders whether their bids have been determined to be Qualified Bids by no later than **4:00 p.m. (prevailing Central Time) on April 27, 2018**. The Debtor reserves the right to reject any bid on any grounds or extend this deadline if clarifying information is necessary.

VII. **Break-Up Fee and Expense Reimbursement**

The Debtor recognizes the value and benefits that the Stalking Horse Bidder has provided to the Debtor by entering into the Stalking Horse APA, as well as the Stalking Horse Bidder's expenditure of time, energy, and resources. Therefore, in the event another party other than the Stalking Horse Bidder is the Successful Bidder for the Assets, subject to the terms of the Stalking Horse APA, the Debtor shall pay a break-up fee to Stalking Horse Bidder in an amount equal to $12,500 (the "Break-Up Fee") plus actual, documented, reasonable expenses.

**VIII.   Auction Process**

In the event that the Debtor receives more than one Qualified Bid, the Debtor will conduct an auction (the "Auction") for the Assets. The Auction will take place on **April 30, 2018 at 10:00 a.m. (prevailing Central Time)** at Lefkovitz & Lefkovitz, 618 Church Street, Suite 410, Nashville, Tennessee, 37219 and Qualified Bidders may participate telephonically.

The Debtor will have the right to enact detailed procedures for the conduct of the Auction at any time prior to the start of the Auction so long as such procedures are consistent with the Procedures Order. Any rules developed by the Debtor will provide that all bids in the Auction with respect to any set of assets will be made and received in one room, on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding on assets on which they have made a qualified bid with the understanding that the true identity of each Qualified Bidder will be fully disclosed to all other Qualified Bidders participating in the Auction and that all material terms of each Qualified Bid submitted in response to the Baseline Bid (defined below) or to any Subsequent Overbid (defined below) made at the Auction will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

Parties entitled to attend the Auction shall include the Debtor, the Stalking Horse Bidder, Qualified Bidders that submitted Qualified Bids, and each of those respective parties' representatives and other interested parties giving notice to the Debtor's counsel. The Stalking Horse Bidder and each Qualified Bidder shall appear at the Auction in person, telephonically, or through a representative who provides appropriate evidence of such person's authority. Only a Qualified Bidder that submitted a Qualified Bid and the Stalking Horse Bidder shall be entitled to make bids at the Auction.

Prior to the Auction, the Debtor will share with all Qualified Bidders the highest and best bid received at the Bid Deadline (each, a "Baseline Bid"). Qualified Bidders will be permitted to revise, increase, and/or enhance their bids at the Auction based upon the terms of the Baseline Bid. All Qualified Bidders will have the right to make additional modifications to their Modified APA or the Stalking Horse APA, as applicable, at the Auction.

The Auction will be conducted in rounds and in any order the Debtor determines. At the end of every round, the Debtor shall declare the highest and best bid

at that time for the Assets. Each Qualified Bidder shall have the right to continue to improve its respective bid at the Auction. The initial minimum overbid shall be the Baseline Bid plus $10,000 (the "Initial Overbid"). Thereafter, a Qualified Bidder (including the Stalking Horse Bidder) may increase its Qualified Bid in any manner that it deems fit; provided, however, that each subsequent bid above the Initial Overbid (each, a "Subsequent Overbid") must have a purchase price that exceeds the purchase price of the previous highest bid by at least $10,000 of additional consideration in terms of net value to the Debtor. For any Initial Overbid or Subsequent Overbid, the Stalking Horse Bidder shall receive a credit for the Break-Up Fee.

The Initial Overbid and Subsequent Overbids must continue to meet each of the criteria of a Qualified Bid (other than the requirement that such bids be submitted by the Bid Deadline), including a purchase price that includes the Minimum Cash Overbid Amount. The Debtor reserves the right to approach any Qualified Bidder and seek clarification to bids at any time.

The Auction will continue until the Debtor's Chief Restructuring Officer determines, subject to Bankruptcy Court approval, that they have received the highest and best offer for the Assets (a "Successful Bid") and the next highest and best Qualified Bid for the Assets as the next highest and best offer for the Assets (each, a "Reserve Bid"). The Qualified Bidder submitting the Successful Bid shall be the "Successful Bidder" and the Qualified Bidder submitting the Reserve Bid shall be the "Reserve Bidder." Within 24 hours of identifying any Successful Bidder and Reserve Bidder, the Debtor shall file a notice with the Bankruptcy Court identifying such parties.

The Debtor reserves the right, in its business judgment, to make one or more modifications and/or adjournments to the Auction to, among other things: (i) facilitate discussions between the Debtor, on the one hand, and individual Qualified Bidders, on the other hand; (ii) allow individual Qualified Bidders to consider how they wish to proceed; and (iii) give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment may require. To the extent the Auction is canceled or postponed, the Debtor shall file a notice with the Bankruptcy Court.

### IX. The Sale Hearing

At the Sale Hearing, the Debtor will seek entry of an order authorizing and approving the sale to the Successful Bidder and, on a contingent basis, the Reserve Bidders. No later than **April 27, 2018, at 12:00 noon (prevailing Central Time)**, all objections to the relief requested at the Sale Hearing shall be filed and served in the manner prescribed in the notice of the motion to approve the sale of the Assets.

In the event no Qualified Bid is received, the Debtor reserves the right to request that the Bankruptcy Court advance the date of the Sale Hearing and provide notice of such new date to those parties in interest entitled to notice thereof.

The Sale Hearing may be adjourned or rescheduled from time to time.

**X.      Failure to Consummate Purchase**

Following the Sale Hearing, if the Successful Bidder fails to consummate the closing of the sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor will be authorized, but not required, to consummate the sale with the Reserve Bidder without further order of the Bankruptcy Court. Additionally, the Debtor shall be entitled to seek all available damages from the defaulting Successful Bidder.

April ___, 2018                                                              Respectfully submitted,


/s/_____
S. Lefkovitz


24627320.5